1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

SARIM UY,

                Plaintiff,

        v.

CAROLYN W. COLVIN, Commissioner
of Social Security

                Defendant.

**1:13-cv-1210  BAM**

**ORDER REGARDING PLAINTIFF'S
SOCIAL SECURITY COMPLAINT**

**(Docs. 12 and 15)**

## INTRODUCTION

Plaintiff  Sarim Uy ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

Supplemental Social Security Income ("SSI") pursuant to Title XVI of the Social Security Act.[1]

The matter is currently before the Court on the parties' briefs, which were submitted, without oral

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule
25(d) of the Federal Rules of Civil Procedures, Carolyn W. Colvin is substituted for Michael J. Astrue as the
defendant in this action.

1

argument, to the Honorable Barbara A. McAuliffe, United States Magistrate Judge.[2]

## BACKGROUND AND PRIOR PROCEEDINGS[3]

Plaintiff was born in Cambodia and served in the Cambodian military before coming to the United States. AR 124, 232.  He worked as a home health aide taking care of his mother, but has not worked for several years due to problems with depression and posttraumatic stress disorder.  Plaintiff also alleges back pain, gastritis, headaches, knee pain, and insomnia. AR 157, 160, 165, 173, 216-310.

Plaintiff first applied for SSI on March 9, 2010. AR 13. After his application was denied, he requested a hearing by an Administrative Law Judge ("ALJ"). AR 45-58; 97-107.  ALJ Philip Callis held a hearing on December 21, 2011.[4] AR 26-44. On January 5, 2012, the ALJ issued an unfavorable decision. AR 13-21. The Appeals Council denied review (AR 1-3), and the ALJ's decision became the final decision of the Commissioner which is the subject of the instant appeal.

## MEDICAL RECORD

The entire medical record was reviewed by the Court.  AR 216-310.  At issue here are the opinions of three doctors: 1) Dr. Maximo Parayno, Jr. M.D., Plaintiff's treating psychiatrist (AR 281-295), 2) Dr. Aparna Dixit, M.D., a consultative examining psychologist (AR 232-236), and 3) Dr. Kamalullah Yusufzie, M.D. a consultative physician. AR 237-240.

*a)*        ***Dr. Parayno, M.D.***

Dr. Parayano,  M.D. a psychiatrist, was Plaintiff's treating psychiatrist from April 2010 until August 2011.  AR 281-295.  During this time, he was treating Plaintiff for major depression and posttraumatic stress disorder. AR 289-295.  On July 27, 2011, Dr. Parayno prepared a mental assessment regarding Mr. Uy's mental impairments. AR 282-287. He diagnosed him with a

---

[2] The parties consented to the jurisdiction of the United States Magistrate Judge.  (*See* Docs. 5 & 7).
[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.
[4] A hearing had previously been scheduled to be heard before ALJ Laura Havens on August 4, 2011.  However, at the hearing, Plaintiff requested an opportunity to obtain counsel and the hearing was continued.  AR 40-44.

2

severe major depressive disorder and posttraumatic stress syndrome, and assigned him a Global Assessment of Functioning of 49.  AR 282. With regard to symptoms, Dr. Parayno noted depressed mood, blunted affect, hopelessness, recurrent nightmares and flashbacks, outbursts of anger, irritability, an inability to think clearly or concentrate, and an impaired memory and attention span. AR 281-282.  He assessed a poor ability to function in the areas of making occupational adjustments, making performance adjustments, and making personal-social adjustments. He also assessed moderate episodes of decompensation.  AR 282-283.  As part of this assessment, Dr. Parayno noted Mr. Uy's inability to speak English, that Mr. Uy was unable to repeat a phone number, and that he misplaced his personal items.  AR. 281-282.  Dr. Parayno opined Plaintiff would be absent about three times per month, although his personal appearance was fair, and he had a fair ability to understand, remember and carry out complex instructions. AR 286.

Dr. Parayno filled out a separate form assessing multiple areas of functioning.  AR 284-287.  Dr. Parayno opined Plaintiff suffered from marked limitations in social functioning, daily living and concentration, persistence and pace, and noted that stressful work-related activities would affect his impairment. AR 287. Dr. Parayno stated that Mr. Uy was a military aide in Cambodia, was tortured and lost his brother during the war. AR 287.  Plaintiff's response to treatment is fair and Dr. Parayno indicated that Plaintiff's prognosis is fair to guarded. AR 287.

Dr. Parayno's progress notes from April 2010 to August 2011 indicate that he saw Plaintiff on seven occasions.  AR 289-295.   During these visits, Dr. Parayno reported that Plaintiff had a blunt affect, poor memory, poor concentration/attention span, and misplaced items at home.  *Id*. He also had a constricted social life and restricted daily activities. *Id*.  During one visit on April 10, 2010, Dr. Parayno noted auditory hallucinations.  AR 295. Dr. Parayno's handwriting is very difficult to decipher, but it appears Plaintiff's treatment included prescriptions

for Seroquel and Serotine. AR 289-295.

### b)   Dr. Aparana Dixit

At the request of the state agency, Dr. Dixit, PhD, a consultative psychologist, conducted a psychological evaluation of Plaintiff on July 28, 2010.  AR 232-263.  Dr. Dixit noted Plaintiff's symptoms were in the mild range and the likelihood of improvement within twelve months was fair.  AR 235.  Dr. Dixit determined that Plaintiff's ability to understand, remember, and carry out very short and simple instructions; deal with various changes in the work environment; and complete a normal workday and work week without interruption at a consistent pace is good. AR 236.  His ability to understand and remember detailed instructions; maintain attention and concentration; accept instructions from a supervisor and respond appropriately; sustain an ordinary routine without general supervision; and interact with co-workers is fair.  Finally, Dr. Dixit opined that  the likelihood of emotionally deteriorating in a work environment is minimal. AR 236.

### c)   Dr. Kamalullah Yusufzie

On July 28, 2010, Dr. Kamalullah Yusufzie, M.D., conducted a consultative medical evaluation.  AR 237-240.  Dr. Kamalullah noted Plaintiff ambulated without assistance, sat comfortably, and changed positions without difficulty.  AR 238.  He found no objective abnormalities and noted that Plaintiff had a full range of motion throughout his body, had normal muscle tone, bulk, and full 5/5 strength.  AR 239-240.  The doctor's functional assessment determined that Plaintiff was able to stand, walk, and sit without limits, and that lifting, carrying, postural, manipulative, or workplace environmental limits were not needed. AR 240.

### THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, Plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or

mental impairment that has lasted or can be expected to last for a continuous period of not less

than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a

disability only if:

> his physical or mental impairment or impairments are of such severity that he is
> not only unable to do his previous work, but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial gainful
> work which exists in the national economy, regardless of whether such work exists
> in the immediate area in which he lives, or whether a specific job vacancy exists
> for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established

a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §

404.1520(a)-(f).  The ALJ proceeds step by step in order and stops upon reaching a dispositive

finding that the claimant is disabled or not disabled.  20 C.F.R. § 404.1520(a)(4).  The ALJ must

consider objective medical evidence and opinion testimony.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in

substantial gainful activity during the period of alleged disability, (2) whether the claimant had

medically-determinable "severe" impairments,[5] (3) whether these impairments meet or are

medically equivalent to one of the listed impairments set forth in 20 C.F.R. 404, Subpart P,

Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to

perform his past relevant work,[6] and (5) whether the claimant had the ability to perform other jobs

existing in significant numbers at the regional and national level.  20 C.F.R. § 404.1520(a)-(f).

**1.    Summary of the ALJ's Findings and Decision**

Using the Social Security Administration's five-step sequential evaluation process, the

[5] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).
[6] Residual functional capacity captures what a claimant "can still do despite [his] limitations."  20 C.F.R. § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

ALJ determined that Plaintiff did not meet the disability standard.  AR 13-21.  More particularly, the ALJ found that Plaintiff had not engaged in gainful activity since March 9, 2010, the alleged onset date.  AR 15.  Further, the ALJ identified major depressive disorder and posttraumatic stress disorder as severe impairments.  AR 16.  Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listing impairments.  AR 16-17.

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, but is limited to work with simple repetitive tasks and limited contact with co-workers and the public. AR 17.  After considering the testimony of a vocational expert, the ALJ determined that Plaintiff could work as a general cleaner, a hand packager, and a dishwasher/kitchen helper.  AR 20.

Here, Plaintiff argues that the ALJ erred by: 1) failing to articulate specific and legitimate reasons for rejecting Dr. Parayana's opinion, and 2) improperly determining that Mr. Uy did not suffer from any severe physical impairments that caused more than minimal limitations.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence, and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

 "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*  Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

1

**DISCUSSION**

2

### 1.   The ALJ Properly Evaluated the Medical Evidence  Related to Plaintiff's Psychological Impairments

3

4

Plaintiff contends the ALJ improperly evaluated Plaintiff's psychological limitations

5

because he rejected Dr. Parayno's treating physician opinion and gave more weight to Dr. Dixit's

6

consultative assessment.  In opposition, Defendant contends that the ALJ's rejection of Dr.

7

Parayno's opinion was proper because the ALJ gave specific and legitimate reasons for rejecting

8

it.  A review of the record establishes that the ALJ's analysis of the record regarding Plaintiff's

9

10

psychological condition is proper and is supported by substantial evidence.

11

**(a)**   *The Legal Standards*

12

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

13

who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant

14

(examining physicians), and (3) those who neither examine nor treat the claimant (non-examining

15

physicians).  In the hierarchy of physician opinions considered in assessing a social security

16

claim, "[g]enerally, a treating physician's opinion carries more weight than an examining

17

physician's, and an examining physician's opinion carries more weight than a reviewing

18

physician's."  *Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007); Holohan v. Massanari*, 246 F.3d

19

1195, 1202 (9th Cir. 2001); *See also*, 20 C.F.R. § 404.1527(c)(1)-(2).  If a treating physician's

20

opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques

21

and is not inconsistent with the other substantial evidence in [the] case record, [it will be given]

22

controlling weight."  20 C.F.R. § 404.1527(c)(2).

23

24

However, an ALJ may reject a treating physician's opinion.  When the treating doctor's

25

opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing"

26

reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's

27

opinion is contradicted by another doctor, the Commissioner may not reject this opinion without

28

providing "specific and legitimate reasons" supported by substantial evidence in the record for so

doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). If a treating physician's opinion is

not given "controlling weight" because it is not "well-supported" or because it is inconsistent

with other substantial evidence in the record, the Administration considers specified factors in

determining the weight it will be given. Those factors include the "[l]ength of the treatment

relationship and the frequency of examination" by the treating physician; and the "nature and

extent of the treatment relationship" between the patient and the treating physician. *Id.* §

404.1527(c)(2)(i)-(ii).  Additional factors relevant to evaluating any medical opinion, not limited

to the opinion of the treating physician, include the amount of relevant evidence that supports the

opinion and the quality of the explanation provided; the consistency of the medical opinion with

the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors"

such as the degree of understanding a physician has of the Administration's "disability programs

and their evidentiary requirements" and the degree of his or her familiarity with other information

in the case record. *Id.* § 404.1527(c)(3)-(6).

> *(b)*    ***Analysis***

After providing a description of the functional assessments of the doctors, when

evaluating the weight to give the medical evidence related to Plaintiff's psychological

impairment, the ALJ Callis found as follows :

> As for the claimant's alleged major depressive and posttraumatic
> stress disorder, the claimant has not generally received the type of
> medical treatment one would expect for a totally disabled
> individual.  The medical evidence of record indicates that Maximo
> A. Parayno JR., M.D. has treated the claimant from April of 2010
> through August of 2011.  During the time[sic] the claimant has
> been seen eight times, approximately every two-three months.  The
> progress notes consist of complaints related to depression.
> However, they are very routine in nature.  Each time the claimant is
> prescribed medications and scheduled with routine follow-up
> appointments in 2-3 months.  There are no hospitalizations or
> increases in treatment.  In Dr. Parayno's mental assessment dated

July 27, 2011, he assigned the claimant a Global Assessment of Functioning (GAF) score of 49. [sic] Which indicates a serious impairment in social, occupational, or school functioning. However, receiving routine treatment of every two of three months does not seem to justify the GAF score of 49.  The GAF scale indicates the clinician's judgment of the individual's overall level of functioning.  It is measured on a scale of 1 to 100 with 1 being persistent danger of hurting self or others and 100 being no symptoms. (AR 18).

.   .   .   .   .   .   .   .   .

… [I]n this case, the undersigned gives significant weight to Dr. Dixit's opinion and reduced weight to Dr. Parayno's opinion.  Dr. Parayno's treatment notes contain a recitation of the claimant's complaints, but not much observation or analysis.  He apparently relied quite heavily relied on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet, as explained elsewhere in this decision, there exists good reason for questioning the reliability of the claimant's subjective complaints.  Moreover, since Dr. Parayno's recorded few observations, the opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion.  For these reasons, the undersigned finds Dr. Parayno's opinion unpersuasive. (AR 19).

Given the above, ALJ Callis' reasons for rejecting Dr. Parayno's opinion are proper.  Specifically, the ALJ indicated that: (1) the treatment and symptoms were routine in nature as Plaintiff was only seen eight times, approximately every two to three months;[7] (2) Plaintiff had no hospitalizations or increases in treatment; (3) the doctor relied heavily on the subjective reports of plaintiff which the ALJ found not to be credible; and (4) the opinion was conclusory and contained little explanation of the evidence relied upon in forming the decision.  These reasons are specific and legitimate.  A brief and conclusory form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Moreover, the "more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more

---

[7] As previously noted in this decision, Dr. Parayno only saw Plaintiff seven rather than eight times.

weight we will give that opinion" and "the better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 416.927(c)(3).  Although Plaintiff correctly notes that Dr. Parayno's progress notes were divided into objective and subjective findings, the doctor's notes are difficult to read, there is little explanation of the evidence the doctor relied on to support the opinion, and the objective findings were in the form of a check off-box which supports the ALJ's determination that the opinion was conclusory. *Batson v. Commissioner, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly discounted treating physician's opinion where, *inter alia*, opinion was in form of checklist).  An "ALJ may [also] reject a treating physician's opinion that is based to a large extent on a claimant's own accounts of symptoms and limitations may be disregarded where those subjective complaints have been properly discounted by the ALJ. *See, Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("ALJ may reject a treating  physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (same).  In this case, the ALJ found Plaintiff's testimony not credible and Plaintiff has not challenged that finding.

Here, Dr. Parayno's opinion was contradicted by the opinion of psychological consultative examiner Dr. Aparna Dixit, who opined that Plaintiff's ability to understand, remember, and carry out very short and simple instructions; deal with various changes in the work environment; and complete a normal workday and work week without interruption at a consistent pace is good. AR 19, 237-240. Thus, her examination indicated that Plaintiff had good to fair abilities in every mental work related functional category.  AR 237-240.  A contrary opinion of an examining source can constitute a specific and legitimate reason for rejecting the opinion of a treating source. *See, Tonapetyan*, 242 F.3d at 1149 (9th Cir. 2001); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating

physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict".) Thus, the ALJ reasonably resolved the evidentiary conflict and accorded the Dr. Dixit's opinion more weight.

Lastly, Plaintiff complains that the ALJ should discount Dr. Dixit's report because Dr. Dixit did not have access to all of Plaintiff's medical and non-medical records prior to the consultative examination. Plaintiff's argument is without merit, however, because Social Security regulations do not require that a consulting physician review all of the claimant's background records. *See, e.g.*, 20 C.F.R. § 404.1517; *Walshe v. Barnhart*, 70 Fed. Appx. 929, 931 (9th Cir. 2003) (consulting physician not required to review Plaintiff's background records).

In sum, the ALJ gave specific and legitimate reasons for rejecting Dr. Parayna's opinion. and crediting it "little weight." AR. 19. The ALJ properly resolved the conflict between Dr. Parayna and Dr. Dixit.  Specifically, he concluded Plaintiff could perform a full range of physical work at all exertional levels, but limited Plaintiff to work involving simple repetitive tasks and limited contact with co-workers and the public, which is consistent with Dr. Dixit's conclusions. *See Andrews v. Shalala,* 53 F.3d at 1039 (holding that it is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical record and determine the credibility of medical sources). Accordingly, the ALJ's finding in this regard is free of legal error and is supported by substantial evidence.

## 2. The ALJ properly Determined That Plaintiff Did Not Suffer from Any Severe Physical Impairment Causing More than Minimal Limitations.

Plaintiff argues that the ALJ improperly determined that Plaintiff did not suffer from any physical impairments that caused any exertional or nonexertional limitations.  Defendant contends that the ALJ's RFC was proper because Plaintiff failed to carry his burden of showing

11

that his alleged physical impairments caused any functional limitations.  A review of the record

shows that the ALJ's analysis of Plaintiff's physical limitations was proper.

Plaintiff contends that the ALJ improperly concluded that his back pain, gastric disorder,

insomnia, and headaches were not severe enough to cause more than minimal limitations.

Specifically, Plaintiff notes that he was seen by doctors at Samakholm Medical Center and Aspen

Family Medical Group over a period of years for headaches, gastritis, cephalgia, vertigo,

insomnia and low back pain. AR 216-23; AR 265-271; 297-310.  In November 2010, Mr. Uy

underwent testing that confirmed that he suffered from gastroesophageal reflux. AR 272.  In July

2011, Mr. Uy also underwent an x-ray of the lumbar spine. The x-ray revealed a slight decrease in

scoliosis of the lumbar region and relatively stable discogenic disease at the L5-S1 level. AR

304. A thoracic spinex-ray dated July 14, 2011 revealed 7-degree scoliosis convex to the right at

T8-9. AR 305.

Based on the above, Plaintiff alleges that the ALJ improperly found that he did not suffer

from severe impairments that caused more than minimal limitations.  However, the severity

regulation requires a claimant to show that she has an impairment or combination of impairments

which "significantly limit[s]" the "abilities and aptitudes necessary to do most jobs." 20 CFR §§

404.1521, 416.921; *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (if a claimant's impairments are

"not severe enough to limit significantly the claimant's ability to perform most jobs, by definition

the impairment does not prevent the claimant from engaging in any substantial gainful activity").

Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a

severe impairment that prevented performance of substantial gainful activity and that this

impairment lasted for at least twelve continuous months.  20 C.F.R. §§ 404.1505(a), 404.1512,

416.905, 416.912; *Bowen*, 482 U.S. at 146, *Casey v. Shalala*, 999 F.2d 542, 542 (9th Cir. 1993);

42 U.S.C. § 423(d)(5)(A) (a claimant will not be considered to be under a disability unless he or

she furnishes medical and other evidence of the existence thereof); 20 C.F.R. § 416.912(c) ("[a

claimant] must provide evidence ... showing how [the alleged] impairment(s) affects ... [his or

her] functioning").

Here, the ALJ discussed Plaintiff's scoliosis, noting that x-rays of Plaintiff's back

revealed no more than a minimal limitation. AR 15.  Furthermore, the record does not reveal any

functional limitations due to scoliosis, or any of Plaintiff's other physical impairments that would

significantly impact his ability to work.  In fact, a review of the medical record reveals that the

documents Plaintiff relies upon are progress notes outlining office visits at various clinics.[8] AR

AR 216-623, 265-271,300, 306.  No physician opined that Plaintiff would need modifications at

work as a result of any of the conditions. To the contrary, when Mr. Uy was seen by Dr.

Yusufzie, the state agency consultant in July 2010, Plaintiff told Dr. Yusafzie about his headaches

and low back pain. AR 237-238.  However, after completing a comprehensive examination, Dr.

Yusafzie determined that no functional limitations that were warranted. AR 240.

Given the above, the ALJ properly relied on Dr. Yusufzie's assessment as there is no other

documentation identifying any functional limitation impacting Plaintiff's ability to work as a

result of these alleged impairments. While Plaintiff alleged a variety of physical conditions, the

Social Security Act is unambiguously clear that an "individual's statement as to pain or other

symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). *See

also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an

impairment is insufficient proof of a disability" because the "claimant bears the burden of proving

that an impairment is disabling").  Here, the Plaintiff did not meet his burden to establish that

these impairments were disabling.  Accordingly, the ALJ's finding that Plaintiff did not suffer

---

[8] Interestingly, while Plaintiff's testified he experienced pain at the hearing (AR 33), he did specifically complain of these other ailments.  Also, the Court notes that Plaintiff never raises these conditions as a basis for appeal in either his letter of reconsideration to the agency or in the letter submitted to the Appeals Counsel.  AR 211, 213.

from any severe physical impairment is proper.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant, Commissioner of Social Security and against Plaintiff, Sarim Uy.

IT IS SO ORDERED.

Dated:  __**January 26, 2015**__          ___/s/ Barbara A. McAuliffe___
                                        UNITED STATES MAGISTRATE JUDGE

14